UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 22-10353-RGS

UNITED STATES OF AMERICA

v.

FRANCISCO GABRIEL DIAZ

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

April 10, 2024

STEARNS, D.J.

Defendant Francisco Gabriel Diaz, who is charged with firearms and drug offenses, seeks to suppress incriminating evidence seized pursuant to a warrant-authorized search of 52 School Street, Apartment #3, in Roxbury, Massachusetts. The warrant was issued by Judge Kathleen Coffey in the West Roxbury District Court based on the application and affidavit of Boston Police Officer Richard Slamin. A non-evidentiary hearing on the motion to suppress was held on November 15, 2023.

First, some basic considerations of law: In the law of search and seizure, there is a strong preference for the "informed and deliberate determinations of magistrates." *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932). In recognition of this preference, courts reviewing warrants "will accept evidence of a less 'judicially competent or persuasive character

than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), quoting *Jones v. United States*, 362 U.S. 257, 270 (1960). Warrants are not to be subjected to niggling scrutiny, but are to be evaluated in "a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

A search warrant may issue on a showing of probable cause — probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979); *see also Safford Unified Sch. Dist. # 1 v. Redding*, 557 U.S. 364, 371 (2009) (probable cause is a fluid concept taking its substantive content from the particular circumstances – "the best that can be said generally about the required knowledge component of probable cause . . . is that it raise a 'fair probability,' or a 'substantial chance,' of discovering evidence of criminal activity."), quoting *Illinois v. Gates*, 462 U.S. 213, 238, 244 n.13 (1983) (internal citations omitted).

Whether a challenged warrant issued on a sufficient showing of probable cause is a question of law to be determined by the reviewing court. *See Beck v. Ohio*, 379 U.S. 89, 96 (1964). A review of a finding of probable cause for issuance of a search warrant begins and ends with the "four corners

of the affidavit." *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999).

A magistrate judge may rely on common knowledge in drawing inferences from the information presented in an affidavit. *See Commonwealth v. Byfield*, 413 Mass. 426, 430 (1992) (magistrate could infer that an informant's description of a purchase of a "forty" pertained to drugs). The magistrate judge may also consider the experience and training of the affiant in assessing probable cause, a proposition that the First Circuit has endorsed "with a regularity bordering on the echolalic." *United States v. Floyd*, 740 F.3d 22, 35 (1st Cir. 2014).

This motion to suppress will be resolved on the following facts, all but the first derived from the body of Officer Slamin's affidavit.

1. By the time he applied for the School Street warrant, Officer Slamin had accumulated eighteen years of service as Boston Police officer, including assignments in the Youth Violence Task Force and the Drug Control Units for Area 7 (East Boston) and Area B2 (Roxbury/Dorchester). During his policing career, Officer Slamin had made over 1,000 arrests, many for drug offenses, and had been involved in the initiation and execution of numerous search warrants. He had also attended multiple in-service training

programs in crime detection and drug enforcement.

2. In February of 2021, a confidential informant designated as X told Officer Slamin that a person known to him as Tee regularly sold "crack cocaine in the Dudley Triangle area of Roxbury." Government's Opp'n to Mot. to Suppress (Gov't Opp'n), Ex. 1 (Dkt. # 44-1). Officer Slamin knows X to be an experienced user of crack cocaine. X, who was a paid and enrolled police informant, had provided information to Officer Slamin in the past that had led to multiple drug arrests and convictions. The reliability and basis of knowledge of X is not contested.

3. Using the ruse of a field investigation, officers determined Tee's identity as that of the defendant, Francisco Gabriel Diaz.

4. X agreed to undertake a "controlled buy" of crack cocaine from defendant. That Officer Slamin and his partners observed the protocols developed by the courts to insure the integrity of a controlled buy is not disputed. X made two additional controlled buys from the defendant, the last taking place during the week prior to Officer Slamin's applying for the warrant.

5. Investigation, including physical surveillance, led officers to the

4

determination that the defendant was involved in a romantic relationship with a young woman (designated for privacy purposes as Y.B.B.), who resided with her toddler at Apartment #3, 52 School Street in Roxbury.  Y.B.B. had possession of a 1994 Silver Honda Pilot, Massachusetts plate 2AAT13.  The Pilot was registered to M.B., a relative of Y.B.B.

6. Defendant was observed to frequent regularly the School Street apartment.  He also had regular use of the Honda Pilot, which was customarily parked outside the School Street apartment.  Defendant drove the Honda Pilot to the location of the three crack cocaine sales to X.  In consummating two of the sales, defendant traveled directly in the Pilot from the School Street apartment to the meeting with X.

None of this is a matter of dispute.  The principal issue raised by the defendant is whether police had established probable cause to believe that a nexus sufficient to justify the search of that apartment for contraband existed between defendant's drug dealing and the School Street apartment.

A "nexus between the items to be seized and the place to be searched need not be based on direct observation" and "may be found in the 'type of

crime, the nature of the missing items, the extent of the suspects' opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property [or other contraband].'" *Commonwealth v. Cinelli*, 389 Mass. 197, 213 (1983), quoting *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970). In this case, Judge Coffey, as a Massachusetts judge, would have relied (as presumably would have Officer Slamin) on the considerable appellate authority in Massachusetts holding that a pattern of instances in which a defendant leaves his home to conduct a drug sale will support the inference that drugs and other evidence of drug dealing will be found in his residence. *See Commonwealth v. Escalera*, 462 Mass. 636, 644, 646 (2012) (defendant left his apartment on three occasions to sell drugs and returned immediately to the apartment after three other sales – "A single observation of a suspect leaving his home for a drug deal may also support an inference that drugs will be found in the home where it is coupled with other information such as statements from credible informants"); *Commonwealth v. Perez*, 90 Mass. App. Ct. 548, 552-554 (2016) (police observed at least two drug transactions connected to an apartment where defendant lived with his son; they also corroborated detailed incriminating information supplied by a non-anonymous informant); *Commonwealth v.*

6

*Tapia*, 463 Mass. 721, 726-727 (2012) (same, three transactions including one in which officers saw defendant leave her apartment minutes after receiving an informant's call setting up a drug purchase); *Commonwealth v. Clagon*, 465 Mass. 1004, 1006 (2013) (same, defendant twice proceeded directly from his home to the agreed sale location and on the third occasion returned directly to his premises after delivering the heroin).

      Significant federal authority also supports the proposition that an established and successful drug dealer is likely to keep drugs, proceeds, and records of drug dealing in his home. *See* 2 LaFave, *Search and Seizure*, § 3.7(d) (2020); *see also United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999); *United States v. Gant*, 759 F.2d 484, 488 (5th Cir. 1985); *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993); *United States v. Miggins*, 302 F.3d 384, 393-394 (6th Cir. 2002); *United States v. Whitner*, 219 F.3d 289, 297-299 (3d Cir. 2000) (collecting cases). The First Circuit case relied on by the defendant, *United States v. Roman*, 942 F.3d 43 (1st Cir. 2019), as the government points out, is not inconsistent with this body of law. *See* Gov't. Opp'n at 12-13 (noting that in *Roman* the defendant was never placed at the suspect residence). *Compare Roman*, 942 F.3d 43, *with United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007) ("[W]hen a defendant sells

drugs outside his home, it is reasonable to conclude that there is evidence of his drug dealing activity in the home, particularly when the defendant is observed leaving the home immediately prior to selling drugs.").

## ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Richard G. Stearns            </u>
UNITED STATES DISTRICT JUDGE